So the first case on for argument is Kevin Shelby v. Brookdale Senior Living, 21-15547. Each side has 10 minutes total. So we would be ready for the appellant. If you could please state your name and your appearance and proceed, and let me know how much time you want to save for rebuttal. Yes, good morning, Your Honor. And may it please the Court, my name is Joshua Cardin. I represent Kevin Shelby, the appellant. And I aspirationally would like to reserve one minute for rebuttal, if I can. Okay, thank you. Civil rights without access to the federal courts for enforcement are in perpetual danger of dissipation. And without intervention by this court in this case, they will be reduced to something beneath even basic contract rights under Arizona law. We would ask this court to reverse and remand this case for trial for the following two reasons. First, no valid contract was actually formed under Arizona law. No valid agreement to arbitrate. And second, even if one was formed, that agreement was unconscionable under well-established principles for analyzing arbitration agreements. Now, I am aware of the federal policy favoring arbitration that is often referred to in district court and appellate cases alike. Nonetheless, the Supreme Court reminds us every few years, most recently in the 2019 Henry Schein decision, that arbitration is a matter of consent and not coercion. You don't have a lot of time, and we've obviously read your briefs, so which challenge to the arbitration agreement do you think you have? Which do you think is your strongest argument? The affordability issue, or I'm just, I don't want to put words in your mouth, but what do you think is your strongest argument? Fair enough, Your Honor. The violation of the Rule 56 standard applied to these proceedings, candidly, is I think my strongest argument. The trial court resolved the affordability issue, the formation issue, the identity of the defendants, and whether Mr. Shelby had acted knowingly, as this court has required in the Ashby v. Archstone case, all resolved in the face of factual disputes against Mr. Shelby in violation of the standard applicable. At the very least, there should have been the mini-trial that the FAA contemplates to resolve those factual issues and not simply take the defendant's word for it. So if I had to put one thing in place, I would say it would be that thing. And in Title VII cases, that knowing element has been heightened, and of course if you saw this portion of our brief, there seems to be a growing level of dispute as to whether Congress genuinely intended to force Title VII litigants into the arbitration forum rather than extend that as one of many alternative dispute options in addition to the jury trial option that was added in 1991. So I candidly believe that that's the strongest position I have, is that the trial court resolved fact questions against Mr. Shelby and in favor of the defendant, which, again, we're not sure, except by the defendant's own word, which entity is the even appropriate contracting party, as there is no entity actually named in the arbitration agreement itself. I would like to ask you about the confidentiality provision. Regarding the unconscionability of the confidentiality provision, you gave us two district court cases, an 11th Circuit decision and a California State Court of Appeal decision. What's your best Arizona State authority for your position, and what's your best 9th Circuit authority? And I guess, since I'll just put it all into one thing, is even if we hold the confidentiality provision unconscionable, do you agree that we could sever it from the rest of the agreement? So those are all my questions on confidentiality. Fair enough, Your Honor. I believe that the best – let me answer the last question first, which is, of course, the confidentiality provision could have been severed and leaving the rest of the agreement to stand or fall on its own. I don't have a good 9th Circuit case. I have the Longnecker case in the District of Arizona that I cited, and I have the frequent – Some of this is unpublished, too. Is the Arizona case unpublished? No, the District of Arizona case is an F-Sub 3rd case, Your Honor. That's the Longnecker case. The other thing I have, again, as you – this was the Larson 11th Circuit case. And then I have the general Arizona law trend that will rely on California law in similar areas, and I have cited that authority to the court. But, you know, Your Honor is correct. There is no 9th Circuit provision directly – precedent directly on point there. Can I ask a related question about the confidentiality provision, which is, if I understand your argument that we should be getting rid of the arbitration altogether, but if we weren't to do that and say this should go to an arbitrator, who would decide this question about the confidentiality? Should we decide it, or my thought was maybe the arbitrator would decide, because your argument is that this language, procedures should be conducted on a confidential basis, is overbroad under Arizona law. Why wouldn't the arbitrator be the one to decide that if we decide – if we reject your argument that the arbitration agreement in its entirety is void? I think the arbitrator, Judge Van Dyck, would decide that question. As far as the proceedings themselves, the problem then becomes is what happens after the proceedings. Would Mr. Shelby be at risk for a breach of contract lawsuit for failing to keep the, you know, the proceedings confidential or in some other fashion? So I think the arbitrator would have – Wouldn't this be kind of like other instances where, you know, the arbitrator would decide in theory Mr. Shelby could challenge if the arbitrator, you know, violated a law under – of course, I think he doesn't have much, you know, the standard is very deferential to the arbitrator, I think, if you try to challenge that. But I'm just trying to figure out why we would even decide that issue if we don't agree with you that the arbitration agreement as a whole is void. It seems to me that that would be something that the arbitrator should decide. It sounded like you were agreeing with that. I am going to say, Your Honor, you know, the factor of the confidentiality provision issue is something that appears on the scale for unconscionability. So in terms of looking at the enforceability, then that's an outside looking in question. But in terms of actually interpreting that provision, if Mr. Shelby is compelled to arbitration, I agree that, yes, the arbitrator – I've gotten a little bit of tension with your answer. I think there's Conn's question about severability. If it's really – and I see your point that this is something that, in addition, makes the whole arbitration unconscionable so that we should get rid of it. We should get rid of the entire arbitration, that this should be arbitrated. But if we were to reject that, that as a whole it was unconscionable, then it's not really severable, right? Because I think you're saying, well, if you reject that argument, then the agreement goes to an arbitrator, and the arbitrator can determine the scope of whether this confidentiality thing is problematic, in the first instance at least. Okay. I understand your question a little better now. I think the arbitrator would simply be charged with reading the arbitration to agreement and following its provisions and, therefore, deciding how that confidentiality would look. We're really talking here about is that provision permissible as a matter of law. Of course, you're getting low on time, but actually that's kind of important because, to me, that language, procedures shall be conducted on a confidential basis, is kind of, you know, it's broad language, not super clear. So, in theory, the interpretation of that language itself could resolve your concern about it, right? Like if an arbitrator was to say, what I think that means is something that's, you know, not as broad as it could possibly be, then that would resolve your argument that it's problematic, I think. If there were a decision that the confidentiality portion should be severed, doesn't that take it completely away from the arbitrator because the arbitrator is going to be arbitrating the remaining agreement? And in other words, is there something left for the arbitrator to do if we were to decide that the confidentiality portion was so flawed that it needed to be severed? At that point, no, Judge Arterton. I think that would be taken out of the arbitrator's hands as far as confidentiality. If it's left in, the arbitrator has to decide what it means. If it's taken out, the arbitrator, I think at that point, as a matter of contract law, we're saying that portion no longer exists and, therefore, the arbitrator need not do anything. So, I agree with that. That's what I'm trying to figure out. I'm trying to figure out, obviously, if we can say something about it and sever it and send it back essentially without the confidentiality provision, then the arbitrator can do nothing with the confidentiality provision. We have a case like Kilgore from our court, Vote 09. It says plaintiffs are free to argue during arbitration that the confidentiality clause is not enforceable. So, it seems to me that just like there, here, if we send it back, you could make these kind of arguments to the arbitrator, and the arbitrator could decide both the question of what the scope of this confidentiality clause is and also whether or not it's actually completely non-enforceable. So, I don't know why. I'm trying to figure out why we would decide that, even assuming you're right about your arguments on the confidentiality clause. Unless we get rid of arbitration altogether, why would we decide that? I don't think it's a question of whether the court can decide that, Judge Van Dyck. I think you could. The question of why is much more difficult because I've not really asked the court to read in and read out little chunks of the arbitration agreement, and so the court could clarify the Ninth Circuit's position on confidentiality agreements and perhaps remand it under those circumstances with an instruction to the trial court. But it would seem unusual for this court to do the actual reading out of that provision. Do either of my colleagues have any additional questions? All right. Well, we've used your time, but I'll give you one minute for a rebuttal. Thank you, Your Honor. Thank you. All right. We'll go to the appellee. Good morning. Good morning. I'm Sean Aller on behalf of Brookdale Employee Services, LLC. May it please the Court, we're here today on a motion to compel, a review of a motion to compel arbitration that was granted by Judge Laverty. I think that Judge Laverty got the decision correct in finding that the various arguments from plaintiff were rejected. The evidence submitted in support of the opposition to the motion to compel arbitration was very thin. Mr. Shelby did not deny that he entered into the agreement. He signed it. You can see his signature on it. It's a simple four-page agreement. Unlike a lot of arbitration agreements, this was signed with a wet signature rather than electronic signature. He signed it on July 13, 2009. A company representative signed it that same day with him. And he doesn't deny in the affidavit that he submitted that he didn't sign it or that he was somehow tricked into signing it. Rather, what he says is, no one explained to me that I should have read it. No one said anything about it. But Mr. Shelby had years, literally, with the company to raise these issues if they were really issues. And at no point during his employment did he ask for clarification about any of the issues that he's raising right now. He had a copy of this. He could have asked questions about it. He could have sought clarification, but only after the termination of his employment. And we sought to enforce the arbitration agreement, which was binding on both parties. Did he retain an attorney and then have these questions regarding the enforceability of the arbitration agreement? The arbitration agreement is mutual. It's a standalone agreement. It says at the top it's very conspicuously labeled Employment Binding Arbitration Agreement. It's set forth in very plain language. There's not a lot of legalese here that talks about what his rights are and what the obligations are for both parties. It talks about as a condition of his employment here, any claim or controversy will be submitted to binding arbitration. And then talks through and goes through in detail, paragraph by paragraph, the different issues that are covered. Well, what about the confidentiality provision? It's very broad. You gave us, I'll kind of give you my areas of, you gave us Kilgore and three unpublished district court cases. And it seems to me that Kilgore pets on the issue of confidentiality provision regarding unconscionability. So I'm wondering what's your best Arizona State authority on this issue? And what's your best published Ninth Circuit authority? Because when it's that broad, you know, the advantage that you have as an employer is then you get to keep all of these things secret. And then the employee, even if we say, okay, you have to arbitrate, but then an employee can never look at other arbitrations and show that you're treating different people differently or show, you know, disparate treatment or any number of things. So it seems that that confidentiality is all in your favor, and very broad. Well, thank you, Your Honor. I don't necessarily agree that the confidentiality agreement is in our favor. I don't think there's anything I can do.  How does it favor the employee? Well, I don't think it favors either side. I think it's neutral. And to the extent that the employee would seek to find that type of information, then like a discovery dispute before a judge, that would be up to the arbitrator to decide. Well, it sounds like, but it makes it like a fishing expedition then. If you don't know anything, then you just say, I want every arbitration because I've got to, you know, and a judge isn't, you know, you know how we are. We want people to be more specific. Well, certainly if Mr. Cardin asked for every arbitration, that would be a fishing expedition. But if there were claims against these particular managers or similar claims of racist cremation, that would be certainly something that the arbitrator could review, just like a district court could review to decide whether those were relevant to claims in the current case. Mr. Oller, how do you read the scope of the language that the procedure shall be conducted on a confidential basis? What is the scope of what you contend is covered by confidentiality? I read that as, like most arbitrations, they're conducted by a private judge. So, they're not open to the public. They're not in a courtroom. And so, that would be the private nature of it. But do you read this as extending to the arbitrator's decision to the ability of the parties to discuss the result or implement the result? Well, certainly to implement the result of the arbitration. An arbitration decision is always enforceable in district court. And then how would that proceed if the scope is confidential? This would be a motion to set aside or to enforce, filed under seal. That's a somewhat disfavored approach. I don't know that it would be filed under seal. And I understand that this provision, Section D, doesn't speak to the exact parameters of what confidentiality would be. Isn't that why it's overbroad and problematic? Well, I think that that's something that can be obviously addressed by the arbitrator if there's an issue. But just because there's a confidentiality provision in there, there's no unfair surprise in here. For these substantive unconscionability issues, there has to be some type of unfair surprise and oppression on the other side. There's no evidence in the record of any unfair oppression. What we're doing is we're guessing about how this might be interpreted. But how can there be any record of oppression before the arbitration has taken place when it is the results of that arbitration or considerably other arbitrations that would be in dispute as to the impact of confidentiality? Arbitrators' authority would have concluded by then, no? Well, if this was an issue raised during the arbitration, certainly the arbitrator could address it. Yes, but I'm suggesting that the issues of confidentiality may likely arise after the arbitration is concluded and with respect to what has gone on in that arbitration, identifying witnesses, evidence, et cetera. Certainly, if that were an issue for Mr. Shelby, you know, the arbitrators hold a pre-hearing conference to decide the parameters of the arbitration and the scope. And if that was an issue, that could be decided before the arbitration. What parties can talk about, about the arbitration or about the witnesses. I don't read this as broadly. You know, he can't. Certainly, the award, if there was an award in favor of Mr. Shelby, would be enforced, could be enforced in district court. That couldn't be held confidential, I don't believe. But, you know, these issues can be addressed by the arbitrator during the arbitration. All right. I want to follow up and say that there's two different issues here. One is that it's not enforceable at all. And the other, and they're related, the other is just exactly what this language means, because it literally looks like seven words or something like that. And so, it could be read really broadly, but it also could be read, I suppose, just as confidential basis. So, I would say this is more vague than broad. It's sort of my reading of this. So, the question I've got is, why, I'm trying to figure out if we even have authority to decide this. If we determine that the arbitration agreement stands, then why do we have the ability to figure out what the scope of this is? And secondly, maybe relatedly, maybe not, do we have the ability to decide whether it's enforceable? At least in the first instance, it seems to me maybe on the back end you could if you, you know, somebody, the district court who was being asked to enforce some award. But I'm just trying to figure out, like, why we have authority to address any of this. Well, I agree that I don't know that the limited language here favors one party or the other. And so, I don't know that it's a unfair reading, an unfair burden to have. You say limited language, but I don't know if it's limited or not. See, I have to decide, if I'm going to, like, decide this, I have to decide whether it's limited language. I'm just trying to figure out why I do any of that. Like, I need to, why doesn't the arbitrator do that? It seems to me, I think this, and you look into this more, but I know that in Kilgore, it says that they were plaintiffs for free to argue during arbitration that confidentiality clause is not enforceable. I think the court, our court in Kilgore was, I think, correctly saying this is a question for the arbitrator, not for us. And so, both the influence talking there about enforceability, but also the scope, I think, too. Kilgore court found that the enforceability of confidentiality clause is a matter distinct from the enforceability of an arbitration clause. Yes, that seems to me that's a common thing that our, that federal courts have struggled with, is that, you know, they get confused and they dig into issues, because we like to dig into issues, I guess. But unless we decide that there's an arbitration agreement here and it's not, and it is an enforceable arbitration agreement, I don't see why we have the ability to go and dig into what the scope of this is and whether or not it's enforceable. In other words, I'm not sure it's correct that we can or can't, where we have discretion, which I think is what your colleague said, I'm not sure we even have that ability. Given the, given the congressional favor for arbitration agreements, we have a very limited burden here on proving that an agreement exists. Interpretation of it certainly can be done by the arbitrator, and if there's a challenge there, there isn't. No, I think you've seen that, and I think it certainly can be done. Am I not right that interpretation of these kind of provisions, if the arbitration agreement is proper, that interpretation must be done by the arbitrator, not by us. We don't have authority once we decide that we're done. Yes, I would agree with that. So it all turns on whether or not, you know, the bigger, the unconscionability arguments of your council and such, I think. But, all right. All right, either of you have any additional questions? I just was curious on, Mr. Cardin believes that this agreement undermines the goals and purposes and objectives of Title VII. Am I correct that the arbitrator would have authority to order the reinstatement to employment of Mr. Shelby if the arbitrator were to find that there had been a wrongful discharge? Under Section G of the arbitration agreement, the arbitrator has the power to award all remedies. Right. That can be awarded by a court. I know that, and I want to make sure that that is inclusive of the equitable remedy of reinstatement. Yes, the equitable remedy of reinstatement or reinstatement is not feasible in the equitable remedy of back bay and front bay. And that, however, could never be confidential. That he would be reinstated? Right. No, I don't think so. It would be confidential. I think they would see him at work, though the facility is no longer being operated. So I don't know that that's an option. All right. Thank you. One minute. You have one minute, appellant, for rebuttal to wrap things up. Thank you. Oh, we can't hear you. My apologies. Maybe I can't hear you, but now I can. Thank you.  My colleague suggested that there's not a lot of legalese in this agreement. And I think between the confidentiality clause, which, as is very loosely written, the conflict in the provisions regarding equitable relief, the burden of proof language that would seem to require Mr. Shelby to negate, prove his own claims and negate all affirmative defenses the way that that's worded. I think this particular agreement is not one that complies with the well-established rules in the Ninth Circuit for the enforceability of arbitration agreements. There are plenty that have been. I've arbitrated cases. I'm not anti-arbitration. I am pro-civil rights, and I'm pro-following the rules. And this anonymous, you know, undesignated arbitration agreement is not one of the ones that ought to be enforced by the trial court or by this court. We would ask for reversal. Thank you. Do either of my colleagues have questions? No. Thank you. All right. Thank you both for your helpful arguments in this matter. This case will stand submitted. Thank you. Thank you. Thank you.
judges: CALLAHAN, VANDYKE, Arterton